**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| **DEBORAH LEDOUX**<br>    **Appellant** | **CIVIL ACTION**<br>**NO. 07-1249** |
| **VERSUS** | |
| **MICHAEL J. ASTRUE**<br>**COMMISSIONER OF SOCIAL SECURITY**<br>    **Appellee** | **JUDGE JAMES T. TRIMBLE, JR.**<br>**MAGISTRATE JUDGE JAMES D. KIRK** |

<u>REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE</u>

Deborah Ledoux ("Ledoux") protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on May 27, 2004 alleging a disability onset date of August 25, 2003 (R. 54-58, 157-159). The applications were denied September 28, 2004 and Ledoux filed a request for hearing on October 15, 2004 (R. 48-49). A hearing was held via video teleconference on October 17, 2006 before Gary J. Suttles, Administrative Law Judge ("ALJ"). Ledoux, her attorney, D. Bruce Jones and Ledoux's husband, Buddy Ledoux appeared at a hearing site in Lake Charles, Louisiana while the ALJ and Vocational Expert ("VE"), Thomas King, appeared at a hearing site in Houston, Texas (R. 16). The ALJ issued a decision dated October 26, 2006 finding Ledoux not disabled under sections 216(1), 223(d) and 1614(a)(3)(A) of the Social Security Act (R. 16-26). Ledoux filed a request for review with the Appeals Council on December 20, 2006 (R. 11-12).

On June 26, 2007, the Appeals Council denied Ledoux's request for review of the hearing decision (R. 5-8). Thus, the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

To qualify for SSI and/or DIB, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## SUMMARY OF PERTINENT FACTS

At the time of the hearing, Ledoux was 51 years old (R. 217). She complained of constant pain in her neck and lower back which radiated down her arms and legs due to degenerative disk disease. She also complained of a history of seizures, carpal tunnel syndrome in both wrists, insomnia and inability to concentrate (R. 84, 221-223, 239). Ledoux sought treatment from doctors Fayez Shameih, M.D. and Sleiman Salibi, M.D. in Lake Charles from at least September of 2003 through October of 2006.

Ledoux testified that she underwent a back surgery in 1994 which she deemed unsuccessful because her symptoms remained the same (R. 237). She also discussed the neck surgeries she underwent in 1993 and 1994. She stated those surgeries did not help her symptoms either and her condition continued to deteriorate. She further stated that the pain was so severe she spent five to six days a week in bed (R. 238). However, she also advised that she tried to do things around the house like cook, mop or do laundry, though it aggravates her condition (R. 78, 229). Therefore, her family assisted her with her household chores and shopping (R. 231, 243).

Ledoux's work history consisted of employment as an assistant office manager and as an office manager. She claimed she was forced to quit her job in August of 2004 due to hospitalization for a pulmonary embolism and a continued worsening of her condition.

Ledoux further testified she could only stand, sit or walk ten to fifteen minutes each and could not lift anything heavier than a hairbrush. Her doctor stated that she was not a candidate for surgery for either her neck, back or carpal tunnel syndrome problems. Though he mentioned injections for her back pain, he had yet to determine whether she should go forward with the treatment, and he had not provided braces for her wrists to help with her carpal tunnel syndrome (R. 222-223, 228-229).

The ALJ considered the entire record and found Ledoux had not

3

been under a disability, as defined by the Social Security Act, from August 25, 2003 through the date of the decision, October 26, 2006 (R. 16). In arriving at this conclusion, the ALJ reviewed, among other things, the medical evidence which indicated Ledoux had the following severe impairments: degenerative joint/disk disease, carpal tunnel syndrome, obesity and diabetes (R. 18). The ALJ also determined that none of these impairments, alone or in combination, met or equaled any of the Listings in 20 C.F.R. 404, Subpart P, Appendix 1 (R. 20).

The ALJ posited a hypothetical to the VE which involved someone who could lift and/or carry ten pounds frequently and twenty pounds occasionally, walk four of eight hours, was afforded a sit/stand option, had minimal limitations with respect to fine and gross dexterity, was precluded from running and climbing stairs, ladders, ropes and scaffolding, could occasionally stoop, kneel, crouch and crawl and had no mental limitations. The VE responded that a person with those restrictions could return to work as an office manager (R. 241). The VE further testified that Ledoux acquired transferrable skills, such as record keeping, clerical, bookkeeping and computer skills, which could be utilized in the sedentary semi-skilled positions of payroll clerk, timekeeper and data examination clerk as well as the light semi-skilled position of general file clerk (R. 242). Accordingly, the ALJ determined, based upon the VE's testimony, that Ledoux could

return to her past relevant work as well as the other semi-skilled sedentary and light duty jobs specified by the ALJ.

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices are for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v.

return to her past relevant work as well as the other semi-skilled sedentary and light duty jobs specified by the ALJ.

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices are for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v.

Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Issues

Ledoux raises the following issues for judicial review on appeal:

> 1. The ALJ failed to properly perform a function by function assessment of the Plaintiff's Residual Functional Capacity by failing to discuss all of the Plaintiff's limitations in accordance with 20 C.F.R. 404.1545, 416.945 and SSR 96-8p; and
>
> 2. The ALJ improperly evaluated the Plaintiff's subjective complaints.

Function by Function Assessment

Ledoux argues that the ALJ did not perform a function by function assessment of her residual functional capacity ("RFC") because he did not discuss her sitting or standing other than to allow for a sit/stand option. This argument is frivolous.

In more than three pages of his eleven page decision, the ALJ set forth a discussion of the evidence offered in support of Ledoux's functional limitations. Within that discussion, he sets forth the testimony Ledoux provided regarding her inability to

either sit or stand more than ten to fifteen minutes, her treating physician's statement that she had a substantial loss of ability to sit, stand or walk and the state medical consultants's assessment that she could stand or walk 2 hours and sit 6 hours in an 8 hour day. The inclusion of this evidence shows the ALJ considered her ability to sit and/or stand. Additionally, the ALJ's determination that Ledoux "must be afforded a sit/stand option" shows that the ALJ found she was not capable of prolonged sitting or standing. Rather, he felt she must be afforded the opportunity to alternate between sitting and standing at will.

Social Security Ruling 83-12 provides that in cases where a limitation on the ability to sit or stand exists, the ALJ must consult a VE to determine the implications for the occupational base. This is precisely the measure the ALJ took. He posited a hypothetical to the VE which included the fact the person "must be afforded a sit/stand option." The VE understood the hypothetical posited to him and advised that Ledoux was not only capable of performing her past relevant work but she also possessed skills which readily transferred to three sedentary, semi-skilled jobs: payroll clerk, timekeeper, and data examination clerk.

While Ledoux is correct in stating that sedentary jobs require considerable sitting, not all sedentary jobs are ruled out due to the addition of a sit/stand option. As set forth in Social Security Ruling 83-12, "there are some jobs in the national economy

7

- typically professional and managerial ones - in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled." Such is the case in the instant matter. The VE testified that Ledoux could return to her past relevant work or to the sedentary, semi-skilled occupations of payroll clerk, time keeper or data examination clerk as they all allow for a sit/stand option. Accordingly, because Ledoux can perform such work, she is not considered disabled.

As substantial evidence supports the ALJ's decision, Ledoux's argument lacks merit.

Subjective Complaints

Ledoux sets forth a second argument in her brief claiming the ALJ incorrectly stated the record lacked evidence to support her allegations regarding the side effects of her medications. Ledoux contends that the record contains two entries supporting her complaints of inability to think clearly as a result of taking medication. The first is contained in a report by Dr. Shameih stating that Ledoux should not work because her Neurontin dosage was increased from 100 mg to 300 mg twice a day (R. 130). The other entry is a questionnaire dated November 10, 2004 completed by Dr. Shameih. In it, he notes the 300 mg of Neurontin have a "marked" effect on Ledoux's concentration, persistence or pace (R.

8

133). Ledoux claims these two entries are clear indications that Dr. Shameih knew she was experiencing side effects from her medication.

Despite the numerous visits Ledoux made to Dr. Shameih's office, these are the only two entries in the record which, at best, allude to a problem she experienced with Neurontin. Despite Ledoux's contention to the contrary, the only thing clear from these two entries is that she was prescribed 300 mg of Neurontin.

Additionally, Ledoux argues it is reasonable that she would have been willing to endure the common side effects of medication, and, therefore, not discussed them with her doctor. However, there is evidence in the record which shows she had conversations with her treating physicians regarding her medications. Dr. Shameih noted "[s]he does not like to take medicine and tried to wean herself off all of the medications except Motrin" (R. 115). Another entry states that she is "taking pain medication and trying not to abuse it" (R. 139). A third entry by Dr. Shameih notes "[s]he did not take a lot of medicine in the past few weeks because she is afraid it will make her sleepy" (R. 145). Additionally, a note by Dr. Salibi reveals he and Ledoux had a conversation about weaning herself off of her epilepsy medication (R. 121). These notes by Ledoux's treating physicians reveal she was comfortable discussing her concerns about taking medication; therefore, as the ALJ concluded, she would have been vocal about any side effects she

9

was experiencing.

As there is sufficient evidence in the record to support the ALJ's decision, this ground for relief is without merit.

## Conclusion

After review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), I find there is substantial evidence in the record as a whole to support the Commissioner's decision and that the Commissioner's decision comports with all relevant legal standards. <u>Anthony v. Sullivan</u>, 954 F.2d 289, 292 (5th Cir. 1992).

Accordingly, IT IS RECOMMENDED that Ledoux's appeal be DENIED WITH PREJUDICE.

## Objections

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond too another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT**

**WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING AN APPEAL ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 26th day of August, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE